# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JASON LEOPOLD, *et al.*,

    *Plaintiffs*,

v.

U.S. IMMIGRATION & CUSTOMS
ENFORCEMENT, *et al.*,

    *Defendants.*

Civil Action No. 18-2415 (RDM)

## MEMORANDUM OPINION

Plaintiffs Jason Leopold and Buzzfeed, Inc., bring this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking to compel U.S. Immigration and Customs Enforcement ("ICE"), the U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), and U.S. Citizenship and Immigration Services ("USCIS") to release videos, audio recordings, and photographs depicting the agency's treatment of migrants, migrant children, criminal aliens, immigrations fugitives, and reentrants.  The case is now before the Court on Defendants' motion for summary judgment and motion to dismiss the case against DHS, CBP, and USCIS as moot, Dkt. 36, and Plaintiffs' cross-motion for summary judgment, Dkt. 38.  For the reasons set forth below, the Court will **GRANT** Defendants' motion to dismiss the case against DHS, CBP, and USCIS, **GRANT** Defendants' motion for summary judgment, and **DENY** Plaintiffs' cross-motion for summary judgment.

## I. BACKGROUND

On June 19, 2018, Plaintiffs submitted a FOIA request to ICE and CBP seeking the following records for the time period beginning January 20, 2017:

(1)    All unedited videos, audio, and photographs shot and recorded by ICE and CBP employees and/or contractors working for both agencies of any and all immigration enforcement actions undertaken by the agency related to migrants and migrant children seeking asylum, criminal aliens, immigration fugitives, and re-entrants;

(2)    All unedited videos, audio recordings, and photographs shot and recorded by ICE and CBP employees and/or contractors working for both agencies of migrant children being separated from their parents or parent and subsequently held in U.S. detention facilities, either those operated by the U.S. government or private prisons and contractors; and

(3)    A copy of the concluding documents (report of investigation, final report, closing memo, referral letter) concerning investigations undertaken by OPR/IG at CBP/ICE/DHS in 2017 and 2018, thus far relating or referring to immigration migrants, criminal aliens, aliens, asylum seekers, and personnel and/or contractor working for these agencies.

Dkt. 1 at 3 (Compl. ¶ 9); Dkt. 1-1 at 1–2 (Ex. A).  Plaintiffs sent similarly worded requests to DHS on June 21, 2018, Dkt. 1 at 3 (Compl. ¶ 10); Dkt. 1-2 at 1 (Ex. B), and to USCIS on August 7, 2018, Dkt. 1 at 4 (Compl. ¶ 11).

ICE responded to Plaintiffs' request by email on June 27, 2018.  Dkt. 1 at 4 (Compl. ¶ 14).  The agency informed Plaintiffs: "In conducting a search for responsive records, the ICE FOIA office has determined that further clarification is needed regarding your request."  Dkt. 1-4 at 1.  It offered to provide an Excel spreadsheet in response to part three of Plaintiffs' request, which Plaintiffs accepted, *id.*; however, when asked about parts one and two of the request, ICE responded only that it is "not capable of editing any video footage," *id.* at 2.  ICE did not provide any documents responsive to parts one and two.  Dkt. 1 at 4–5 (Compl. ¶ 19); Dkt. 11 at 4–5 (Answer ¶¶ 15, 19).

On August 31, 2018, Plaintiffs administratively appealed ICE's constructive denial of their request.  Dkt. 1 at 5 (Compl. ¶ 17).  ICE responded to the appeal on October 2, 2018, explaining that the agency had "begun processing [Plaintiffs'] request on a 'first-in, first out

basis,'" but advised that ICE was "permitted to respond to relatively simple requests more quickly than requests involving complex and/or voluminous records."  Dkt. 1-5 at 1 (Ex. E).  The response informed Plaintiffs that the agency had remanded the request to the ICE FOIA Office "for the completion of processing, including tasking to the appropriate agency/office(s)."  Dkt. 1 at 5 (Compl. ¶ 18); Dkt. 1-5 at 2.  On October 20, 2018, after the ICE FOIA Office failed to provide any further response to the request, Dkt. 1 at 5 (Compl. ¶ 19), Plaintiffs initiated this action, in which they claim that Defendants' failure to produce the requested records violates FOIA, *see* Dkt. 1 (Compl.).

Over the course of the litigation, the parties have engaged in numerous discussions attempting to resolve or narrow their dispute.  *See* Dkt. 17; Dkt. 18; Dkt. 19; Dkt. 21; Dkt. 23; Dkt. 25; Dkt. 26; Dkt. 28; Dkt. 29.  On May 2, 2019, the Court ordered Defendants to "provide plaintiff with declarations explaining any searches performed," Minute Order (May 2, 2019). Defendants complied by sending two unsigned[1] declarations—one from ICE and one from USCIS—to Plaintiffs on June 14, 2019.  *See* Dkt. 38-2 (Ex. A).  In the ICE declaration, Toni Fuentes, ICE's Deputy FOIA Officer, informed Plaintiffs, for the first time, that ICE had declined to conduct a search pre-suit because it concluded that the "searches were not necessary because any videos of children would jeopardize security and safety of detainees and employees as well as be a privacy issue."  *Id.* at 6 (Ex. A ¶ 13).  The declaration further explained that, once Plaintiffs filed suit, ICE "determined that searches at the headquarters ('HQ') level and at two field offices for potentially responsive documentation should be conducted," *id.* at 5–6 (Ex. A

---

[1] In the email that accompanied Defendants' declarations, Defendants' counsel informed Plaintiffs' counsel that the "declarations are unsigned because it is the practice of ICE and USCIS to only provide signed declarations in connection with a motion for summary judgment. However, if with a signed declaration plaintiff would be willing to dismiss ICE and USCIS, this policy can be revisted."  Dkt. 38-2 at 1.

¶ 15), and that those offices reported that they either "do[] not typically maintain" photographs or video footage or that they "did not have any of the requested records." *Id.* at 6 (Ex. A ¶ 15). Based on these reports, the declaration concluded that "ICE does not have records responsive to parts 1 and 2 of the FOIA request." *Id.* (Ex. A ¶ 16).

Plaintiffs "raised concerns with respect to Defendants' declarations," and the parties continued to confer for several months. *See* Dkt. 18; Dkt. 19; Dkt. 21; Dkt. 23. The Court held a status conference on December 2, 2019, to discuss the source of the parties' disagreement. At the status conference, Defendants' counsel explained:

> [W]hen ICE looked into . . . whether or not a reasonable search could be done of [its] video cameras, it determined that it would be . . . unduly burdensome to try to do a search. There are approximately 134 detention facilities that ICE manages across the country. And they have—each one has many security cameras, can be from—anywhere from 60 to 430 cameras and the [video] is kept for approximately between 30 to 90 days before it's copied over, but if they were to try and—if there had been no copying over and they had tried to process the video at issue, ICE admitted it's over [21 million] minutes of video that could be responsive, and now their estimate is that it would take over a thousand years to try and process that . . . .

Hr'g Tr. (Dec. 2, 2019) (Rough at 2–3). At the conclusion of the hearing, the Court asked the parties to continue to confer and to discuss "narrowing [the request] and trying to reach agreement." *Id.* (Rough at 17).

In the months that followed, Plaintiffs proposed limiting their search to specific ICE facilities. Dkt. 25; Dkt. 26. In a January 17, 2020, joint status report, the parties informed the Court (1) that "[t]he only remaining issue to be resolved is a search plaintiffs want of specific ICE and CBP facilities" and (2) that "Plaintiffs [would] . . . provid[e] a list of facilities they propose to be searched" later that day. Dkt. 25 at 1. On February 21, 2020, the parties jointly reported that "[t]he issue remaining to be resolved is Plaintiff's request for videos from ICE detention centers. Plaintiff limited the request to five specific centers, and on February 20, 2020,

Defendant [emailed Plaintiffs with] information about the volume of videos involved."  Dkt. 26 at 1.  In that February 20, 2020 email, Defendants notified Plaintiffs that the five facilities contained over 800 cameras and that "[c]ollecting and processing any of these videos would be overly burdensome" because it would take "thousands of hours and thousands of dollars to redact just one camera."  Dkt. 38-3 at 1 (Ex. B).  Defendants also informed Plaintiffs that "the footage will not always show a detainee going by," which means that ICE officials would need to "search . . . thousands of hours of video just to find any video of detainees."  *Id.*

The parties continued to confer.  On February 26, 2020, Plaintiffs "sought to explore the possibility of limiting the universe of videos to things that have been preserved, collected, or produced in connection with lawsuits filed against CBP, ICE, or DHS involving detention centers," Dkt. 28 at 1 (quotation marks omitted); Defendants replied, however, that this proposal "would entail tasking 1,100 attorneys to search the files and cases in their possession and manually look for video files which would be overly broad and burdensome," *id.*

The parties filed their most recent joint status report on June 5, 2020.  Dkt. 29.  They confirmed that the sole remaining issue is "Plaintiffs' request to Defendant ICE for audio, video, and photographs of immigration enforcement or detention, including the detention of children." *Id.* at 1; *accord id.* at 2.  Plaintiffs reported that they had narrowed their request to "audio, video, and photographs that have already been collected and maintained or otherwise are identifiable as associated with five federal lawsuits involving ICE, where presumably ICE satisfied its obligations to suspend automatic over-writing and may have responsive records" and that "[a]ny such records would be within the scope of the request if they depict immigration enforcement or detention."  *Id.* at 1.  Defendants responded that certain documents "may be subject to protective orders" because the cases are in active litigation, and, regardless, producing the requested

documents would still be "overly broad and burdensome" because the cases involve "dozens of plaintiffs and co-defendants, including multiple other federal agencies." *Id.* at 2.

The parties have since been unable to come to any further agreement. On September 11, 2020, Defendants filed their motion for summary judgment and motion to dismiss. Dkt. 36. Plaintiffs filed a cross-motion for summary judgment on October 30, 2020. Dkt. 38.

## II. LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a complaint for lack of subject-matter jurisdiction. A motion to dismiss a complaint as moot is properly brought under Rule 12(b)(1) because mootness deprives the court of jurisdiction. *See DL v. District of Columbia*, 187 F. Supp. 3d 1, 5 (D.D.C. 2016). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Larsen v. U.S. Navy*, 525 F.3d 1, 3 (D.C. Cir. 2008) (quotation marks omitted). A party lacks a legally cognizable interest in the outcome of a case "when, among other things, the court can provide no effective remedy because a party has already obtained all the relief [it has] sought," *Conservation Force, Inc.*, 733 F.3d at 1204 (quotation marks omitted), or "when intervening events make it impossible to grant the prevailing party effective relief," *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (quotation marks omitted); *see also Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (noting that a case is moot when "there is nothing for [the court] to remedy, even if [it] were disposed to do so"). The "heavy burden" of establishing mootness

rests on the party raising the defense.  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979);

*Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 458–59 (D.C. Cir. 1998).

**B.      Federal Rule of Civil Procedure 56**

FOIA cases are typically resolved on motions for summary judgment under Federal Rule

of Civil Procedure 56.  *See Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C.

2011).  To prevail on a summary judgment motion, the moving party must demonstrate that there

are no genuine issues of material fact and that she is entitled to judgment as a matter of law.  *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In FOIA cases, an agency can meet this

burden by submitting "relatively detailed and non-conclusory" affidavits or declarations.

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The Court reviews an agency's decision to withhold records *de novo*.  *See* 5 U.S.C.

§ 552(a)(4)(B).  A reviewing court should "respect the expertise of an agency" and take care not

to "overstep the proper limits of the judicial role in FOIA review."  *Hayden v. Nat'l Sec.*

*Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

### III. ANALYSIS

Two sets of motions are before the Court.  The first is Defendants' motion to dismiss the

case against DHS, CBP, and USCIS as moot, and the second is the parties' cross-motions for

summary judgment as to Plaintiffs' FOIA request to ICE.  The Court will address each of these

matters in turn.

**A.      Defendants' Motion to Dismiss DHS, CBP, and USCIS as Defendants**

According to Defendants, Plaintiffs' claims against DHS, CBP, and USCIS are now moot

and, thus, must be dismissed for lack of subject-matter jurisdiction.  Dkt. 36 at 4.  For support,

they point to Plaintiffs' representation in the parties' June 5, 2020, joint status report that "the

remaining issue in this case is Plaintiffs' request to Defendant ICE for audio, video, and photographs of immigrant enforcement or detention, including the detention of children," Dkt. 29 at 1.

For their part, Plaintiffs move for summary judgment against all Defendants, *see* Dkt. 38, and they style their opposition brief as a "Memorandum in Opposition to Defendants' Combined Motion for Summary Judgment and Motion to Dismiss," Dkt. 38-1.  But Plaintiffs' briefs do not address Defendants' motion to dismiss Plaintiffs' claims against DHS, CBP, and USCIS, and they refer to Defendant exclusively as "ICE."  *See id.*; Dkt. 42.  In light of Plaintiffs' repeated representations that the sole remaining issue in this case concerns ICE, *see* Dkt. 25 at 1; Dkt. 26 at 1; Dkt. 28 at 1; Dkt. 29 at 1, and their failure to address Defendants' arguments for dismissal, the Court concludes that Plaintiffs have conceded that they have no remaining, live claims against DHS, CPB, and USCIS.  *See Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010).

Accordingly, the Court will dismiss Plaintiffs' claims against DHS, CBP, and USCIS for lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).

## B.  Plaintiffs' FOIA Request to Defendant ICE

That brings us to the heart of the parties' dispute.  The question before the Court is whether ICE violated FOIA by failing to produce any records in response to part one of Plaintiffs' FOIA request. [2]  Answering this question, in turn, requires the Court to address several disputed, subsidiary matters.

---

[2] In their opposition brief, Plaintiffs represented that only part one of their original FOIA request remains at issue.  Dkt. 36 at 17; Dkt. 38-1 at 2 n.1.  As Plaintiffs explained, "the third request was resolved long ago," and "[f]or the purposes of streamlining things, Plaintiffs will drop the second request with the understanding that detention at an ICE facility is included as an 'immigration enforcement action' under the first request."  *Id.*  Thus, all references to the "request" in this opinion refer to part one of Plaintiffs' original FOIA request, unless otherwise noted.

At bottom, ICE maintains that it was never required to provide a response because Plaintiffs' original request is vague and unduly burdensome and thus does not "reasonably describe" the records sought, as required by FOIA.  *See* 5 U.S.C. § 552(a)(3)(A) (conditioning the agency's obligation to reply "upon any request for records which . . . reasonably describes such records").  Plaintiffs offer several responses.  First and foremost, they argue that the wording of their original request is beside the point, because they have narrowed their request over the course of the litigation so that it now reaches only records related to five lawsuits in which ICE is a defendant.  Plaintiffs also disagree that their original request failed to "reasonably describe" the records sought.  In their view, the burden of producing records does not inform whether a request "reasonably describes" records and thus the breadth of their request is irrelevant.  And, in any case, Plaintiffs maintain that ICE waived its arguments that Plaintiffs' request was vague or overly burdensome by not raising those points before summary judgment.

1.    *Plaintiffs' Narrowed Request*

The parties disagree over what request governs at this stage in the litigation:  Defendants maintain that the Court must analyze Plaintiffs' original June 19, 2018, FOIA request for purposes of summary judgment, while Plaintiffs contend that the controlling request is their June 5, 2020, proposal that ICE release only "audio, video, and photographs that have already been collected, maintained, or identified as associated with five lawsuits involving ICE" that "depict immigration enforcement or detention," Dkt. 29 at 1.  The Court agrees with Plaintiffs that they successfully narrowed the scope of their FOIA request when they proposed various search methodologies to ICE during the course of the litigation, and so their June 5, 2020, proposed limitation is the operative request for purposes of summary judgment.

Following the Court's December 2, 2020, status conference, Plaintiffs offered multiple ways to narrow the scope of their FOIA request to mitigate ICE's undue burden objections. These proposals are memorialized in three joint status reports submitted to the Court, signed by counsel for both parties. *See* Dkt. 25 at 1 (discussing Plaintiffs' proposal to narrow the request to "a search . . . of specific ICE and CBP facilities"); Dkt. 28 at 1 ("Plaintiff sought to 'explore the possibility of limiting the universe of videos to things that have been preserved, collected, or produced in connection with lawsuits filed against CBP, ICE, or DHS involving detention centers."); Dkt. 29 at 1 ("Plaintiffs have now offered to limit the search to audio, video, and photographs that have already been collected and maintained or otherwise are identifiable as associated with five federal lawsuits involving ICE . . . .").

Several decisions in this district have recognized that "when a plaintiff narrows his FOIA request in a joint status report, it supersedes any broader request set forth in the plaintiff's complaint." *Am. Ctr. for Law & Justice v. DOJ*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018); *see also*, *e.g.*, *DeFraia v. CIA*, 311 F. Supp. 3d 42, 47 (D.D.C. 2018) ("[I]t is the Joint Status Report, not Mr. DeFraia's original request, that controls."); *Gilman v. DHS*, 32 F. Supp. 3d 1, 22 (D.D.C. 2014) ("The plain meaning of the joint status report makes clear that plaintiff narrowed her FOIA request."); *People for Am. Way Found. v. DOJ*, 451 F. Supp. 2d 6, 12 (D.D.C. 2006) ("[T]he government was a signatory to several Joint Status Reports during the course of this litigation, in which the parties represented—unequivocally—that the FOIA request had been narrowed."). This approach makes sense. As the Court observed in *People for the American Way Foundation*, it "would be senseless and inefficient . . . to ignore the advances made during more than one year of tedious negotiations between the parties, only to have plaintiff file another FOIA request for the narrowed number of files and return to precisely the same position in which

the parties now stand." 451 F. Supp. 2d 6, 11–12 (D.D.C. 2006).  Here, in the parties' June 5,

2020, joint status report, Plaintiffs represented that they had proposed narrowing the search to

include only "audio, video, and photographs that have already been collected maintained, or

identified as associated with five lawsuits involving ICE" that "depict immigration enforcement

or detention," Dkt. 29 at 1.  It is this more limited search, and not the scope of Plaintiffs' original

request, that controls for purposes of summary judgment.

   ICE seeks to distinguish these cases on the ground that they all involved situations in

which the agency consented to Plaintiff's proposed narrowing, whereas here ICE insists it never

agreed to any of Plaintiffs' proposals.  Dkt. 40 at 16–17.  According to ICE, unless and until the

agency accepts an offer to narrow a FOIA request, the scope of Plaintiffs' original request

governs.  *Id.*  ICE's position fails for two reasons.  First, the Court finds no support in the

caselaw for the distinction that ICE offers.  Although *American Center for Law & Justice*,

*DeFraia*, and *Gilman* involved agreements between the parties, that fact was not dispositive in

any of those cases.  *See* 325 F. Supp. 3d at 168; 311 F. Supp. 3d at 47; 32 F. Supp. 3d at 22.  The

court in *American Center for Law & Justice* invoked "traditional waiver principles," but it did so

to prevent the plaintiff from relying on its original request, rather than the narrower scope it

proposed later in the litigation.  325 F. Supp. 3d at 168.  As *Gilman* indicates, what matters in the

final analysis is that "the *plaintiff* narrowed her FOIA request," 32 F. Supp. 3d at 22, not that the

government consented.

   In *People for the American Way Foundation*, the government argued (as it does here) that

its consent was required for a plaintiff to narrow the scope of her original FOIA request during

litigation.  451 F. Supp. 2d at 11 ("Because defendant never accepted this offer, it argues that the

modification never became effective.")  Judge Bates soundly rejected that proposition, *id.* at 11,

finding "no authority . . . for the government's suggestion that its consent is required in order to effectuate a requester's reduction of its own FOIA request," *id.* at 12.  Instead, a plaintiff may unilaterally narrow her request, because "the FOIA requester is the 'master' of the FOIA request." *Id.*  Judge Bates observed that a government-consent requirement was not only "senseless and inefficient," but it also conflicted with the purposes and realities of FOIA litigation: "FOIA requests are frequently clarified or modified even after a lawsuit is filed.  To deny that possibility might be to deny any prospect of compromise or settlement in FOIA cases." *Id.*  The Court agrees that these considerations resolve this question in Plaintiffs' favor.  *See Am. Ctr. for Law & Justice*, 325 F. Supp. 3d at 168 (citing *People for Am. Way Found.*, 451 F. Supp. 2d at 11–12)).

ICE's position also founders because the cases on which it relies, *Landmark Legal Foundation v. Dep't of Labor*, 278 F. Supp. 3d 420 (D.D.C. 2017), and *Freedom Watch v. Dep't of State*, 925 F. Supp. 2d 55 (D.D.C. 2013), are inapt.  In *Landmark Legal Foundation*, the Court considered whether the plaintiff was precluded as a matter of collateral estoppel from arguing that its FOIA request was valid, despite having litigated and lost a prior FOIA case involving a "substantively identical . . . request."  278 F. Supp. 3d at 428.  It was in that unique context that the Court simply observed that it was unable to locate any precedent holding that a plaintiff's mid-litigation, proposed modifications to a FOIA request might "amount to a *new* . . . request" sufficient to avoid preclusion.  *Id.* at 429 (emphasis added).  Beyond noting that lack of precedent, the Court reached no conclusions on the issue and, instead, went on to hold that—"in any event"—even the narrowed request was invalid.  *Id.*  The Court's decision in *Freedom Watch* is equally unhelpful to Plaintiff.  In that case, the plaintiff did not propose to narrow its

12

requests until after summary judgment briefing had already begun and only then offered to "work with Defendant Agencies to narrow its requests."  925 F. Supp. 2d at 62.

For these reasons, the Court concludes that the operative request at this stage in the litigation is Plaintiffs' request for "[a]ll unedited videos, audio, and photographs shot and recorded by ICE . . . employees and/or contractors working for [ICE] of any and all immigration enforcement actions undertaken by the agency related to migrants and migrant children seeking asylum, criminal aliens, immigration fugitives, and re-entrants," Dkt. 1 at 3 (Compl. ¶ 9), as modified by Plaintiffs' June 2020 concession that the search should be limited to those records "that have already been collected and maintained or otherwise are identifiable as associated with five federal lawsuits involving ICE," Dkt. 29 at 1.

2.     *Vagueness*

Beyond this point, however, Plaintiffs' request—even with the narrowed search methodology—runs into trouble.  The problem lies in Plaintiffs' use of the phrase "immigration enforcement actions."

"Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records.'"  *Evans v. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(3)(A)).  In *Krohn v. DOJ*, the D.C. Circuit explained that a request fails to "reasonably describe[]" a record if it is "too vague" to allow the "requested record to be reasonably identified."  628 F.2d 195, 198 (D.C. Cir. 1980).  As support for this proposition, the *Krohn* Court cited to *Irons v. Schuyler*, 465 F.2d 608 (D.C. Cir. 1972).  *Irons* interpreted the counterpart to Section 552(a)(3)(A) that existed in the 1967 version of FOIA.  That provision stated that an "agency, on request for *identifiable records* made in accordance with published rules stating the time, place, fees to the extent authorized by statute,

and procedure to be followed, shall make the records promptly available to any person."  Act of

June 5, 1967, Pub. L. No. 90-23, § 1, 81 Stat. 54, 55 (emphasis added).  In *Irons*, the D.C. Circuit

explained that the "identifiable records" requirement "calls for a reasonable description enabling

the Government employee to locate the requested records," *id.* at 612 (quoting *Bristol-Myers Co.

v. FTC*, 424 F.2d 935, 938 (1970)).  Based on that definition, the court held that a request for "all

unpublished manuscript decisions of the Patent Office, together with such indices as are

available" was not a request for "identifiable records" because "the contours of the records . . .

described are so broad in the context of the Patent Office files as not to come within a reasonable

interpretation of 'identifiable records.'"  *Id.* at 613.  Although Congress later substituted the term

"reasonably describes" for the phrase "request for identifiable records" when it amended FOIA

in 1974, *see* Act of Nov. 21, 1974, Pub. L. No. 93-502, § 1(b)(1), 88 Stat 1561, 1561, this change

did not alter the general rule stated in *Irons*, *see Truitt v. Dep't of State*, 897 F.2d 540, 544 &

n.34 (D.C. Cir. 1990) (discussing the Senate Report's description of the change as "not

intend[ed] . . . to authorize broad categorical requests where it is impossible for the agency

reasonably to determine what is sought" and the report's favorable citation to *Irons* (quoting S.

Rep. No. 93-854, at 10 (1974)).

ICE contends that Plaintiffs' request for "immigration enforcement actions" is

impermissibly vague because it "begs the question of how does a professional employee

determine with a reasonable amount of effort whether 'unedited videos, audio, [or] photographs

shot and recorded' are of . . . an 'immigration enforcement action.'"[3]  Dkt. 36 at 15.  ICE posits

---

[3] ICE also suggests that the request's use of the term "related to" poses a vagueness problem
because the agency cannot reasonably determine whether any given frame of a video recording
from an ICE detention center is "'related to' an 'immigration enforcement action.'"  Dkt. 36 at
15 (citing *James Madison Project v. CIA*, No. 08-1323, 2009 WL 2777961, at *4 (E.D. Va. Aug.

that it is "le[ft] . . . to guess at Plaintiffs' intent regarding what Plaintiffs believe constitutes an

'enforcement action,'" since "[a]ny video, audio, or photograph could relate, in part, to an

enforcement action, which is evidenced by Plaintiffs' failure to provide any further clarity

regarding what it means by an 'enforcement action' in their [r]esponse."  Dkt. 40 at 9.

Plaintiffs counter with two responses: first, that ICE waived its vagueness defense by

failing to raise it before summary judgment, Dkt. 38-1 at 10, 14; Dkt. 42 at 6; and second, that

ICE has not carried its burden at summary judgment of proffering exhibits or affidavits in

support of its contention that agency officials were actually confused by Plaintiffs' request, Dkt.

38-1 at 10; Dkt. 42 at 3.  Tellingly, however, Plaintiffs fail to offer any description or analysis of

what they understand the phrase "immigration enforcement action" to mean, much less how that

phrase "enable[s] [a] Government employee" searching for records to know what to look for.

*Irons*, 465 F.2d at 612.  Instead, Plaintiffs merely protest—without further explanation—that

"ICE cannot seriously contend that it cannot tell whether a video, audio, or photograph depicts

an enforcement action."  Dkt. 38-1 at 6.

The Court agrees with ICE that the phrase "any and all immigration enforcement

actions," without clarification from Plaintiffs, is too broad and vague to "reasonably describe"

the records sought.  Standing alone, this description would not enable an ICE employee

reviewing photographs, audio recordings, or video footage from one of the hundreds of cameras

at ICE detentions centers to identify whether any given depiction reflected an "immigration

enforcement action[] undertaken by the agency related to migrants and migrant children seeking

---

31, 2009)).  The Court will not entertain this argument, however, because it is based on a
misreading of Plaintiffs' request; contrary to what ICE claims, Plaintiff has asked only for
depictions "*of* immigration enforcement actions *related to* migrants and migrant children seeking
asylum, criminal aliens, immigration fugitives, and re-entrants."  Dkt. 1 at 3 (Compl. ¶ 9)
(emphases added); *see* Dkt. 38-1 at 9–10.

asylum, criminal aliens, immigration fugitives, and re-entrants," Dkt. 1 at 3 (Compl. ¶ 9).  *See*

*Irons*, 465 F.2d at 612.  Neither Title 8 of the U.S. Code nor Title 8 of the Code of Federal

Regulations defines the phrase "enforcement action" in the context of immigration, and, as a

matter of common usage, the phrase admits of a broad array of possible meanings.  For instance,

does it refer only to formal administrative proceedings?  Or should it also be read to encompass

administrative arrests?  What about investigations?  Or hundreds of hours of video footage

capturing the ongoing detention of a migrant?  Does the term include footage of an ICE official

walking down the hall to deliver formal papers to migrant, to transport a group of migrants to a

bus that effectuates their removal, or to bring a migrant to a hearing on a pending asylum

application?  Does the word "action" connote any form of interaction between an ICE employee

and a migrant?

Indeed, any *action* taken by an *Immigration* and Customs *Enforcement* official is, in

some sense, an "immigration enforcement action."  *See* Black's Law Dictionary (10th ed. 2014)

(defining "action" to mean "[t]he process of doing anything; conduct or behavior").[4]  In that

case, does Plaintiffs' request require production of footage showing ICE officials arriving at

work in the morning?  Conferring with one another over coffee?  Photocopying documents?

These questions and more would abound if ICE were expected to respond to Plaintiffs' request;

---

[4]  Plaintiffs do not maintain that the word "action," as used in this context, refers only to "[a] civil or criminal judicial proceeding," *Action*, Black's Law Dictionary (10th ed. 2014), or to administrative proceedings, such as hearings before immigration judges (who work for the Department of Justice) or asylum officers (who work for USCIS).  Indeed, Plaintiffs suggest in a footnote in their opening brief that depictions of "detention," at a minimum, qualify as depictions of "immigration enforcement actions."  Dkt. 38-1 at 2 n.1.  As the Court explains below, that clarification comes too late to change the operative request for purposes of summary judgment.  *See Freedom Watch, Inc.*, 925 F. Supp. 2d at 62.  It does suggest, however, that Plaintiffs do not understand the phrase "any and all immigration enforcement actions" to refer only to judicial and/or administrative adjudicatory proceedings.

without greater specificity, the Court cannot conclude that Plaintiffs' request "reasonably describes" the records Plaintiffs seek.  5 U.S.C. § 552(a)(3)(A).

Neither Plaintiffs' "waiver" argument, nor their attempt to cast this issue as an evidentiary dispute, rescues Plaintiffs' claim.  Plaintiffs suggests that ICE waived any argument that the request did not "reasonably describe" the records sought by "failing to raise it at the administrative stage, or in its Answer, or otherwise raising it until after the parties spent over a year negotiating over the scope of a reasonable search."  Dkt. 38-1 at 14 & n.2; *see id.* at 10 (pointing out that ICE "failed to raise vagueness concerns at the administrative stage so the requester could attempt to remedy them").  The Court is unpersuaded that a waiver, or for that matter forfeiture, has occurred here.  At least since ICE began exploring the possibility of producing records in late 2020, it has consistently maintained that it is not obligated to provide a response because Plaintiffs' request does not reasonably describe the records sought.  *See* Hr'g Tr. (Dec. 2, 2019) (Rough at 2); Dkt. 28; Dkt. 29.  This does not present a situation, as in *American Center for Law & Justice*, where a party is seeking to revert to a position it took earlier in the litigation that it subsequently disavowed or ignored, 325 F. Supp. 3d at 168, and so has waived the earlier argument or is estopped from relying upon it.  Plaintiffs, moreover, are unable to point to any authority holding that a FOIA defendant—that constructively denied a FOIA request, as ICE did here—must present in detail its legal theories for failing to respond to the request prior to summary judgment.  Plaintiffs look to the D.C. Circuit's decision in *Maydak v. DOJ* for support, but that case stands only for the proposition that, "as a general rule, [the government] must assert all [FOIA] *exemptions* at the same time, in the original district court proceeding."  218 F.3d 760, 764 (D.C. Cir. 2000) (emphasis added).  Nothing in *Maydak*

suggests that an agency must promptly notify a FOIA plaintiff of the legal arguments supporting the agency's failure to respond to a request, on pain of forfeiture.

Plaintiffs also insist that ICE's vagueness arguments fail because the agency did not offer "any evidence or supporting statements of fact showing that ICE did not understand the request." Dkt. 42 at 3. This argument fails because it misapprehends the nature of the vagueness test as set out in *Krohn* and *Irons*: The relevant question is not whether, as a factual matter, agency officials are confused about the meaning of the request. Instead, courts analyze vagueness by focusing on the *language* of the FOIA request and ask whether the *description* is so broad that it would stymie a reasonable agency official attempting to identify responsive records. *See Krohn*, 628 F.2d at 198 (describing the request as "broad and general"); *Irons*, 465 F.2d at 612 (referring to plaintiff's "sweeping and indiscriminate request"). Neither *Krohn* nor *Irons* required affidavits or evidence to support the court's analysis of the request.

Although not raised by the parties, two final points require the Court's attention. First, the Court considers the possibility that Plaintiffs' request, as modified, "reasonably describes" the records sought by seeking all "audio, video, and photographs that have already been collected and maintained or otherwise are identifiable as associated with five federal lawsuits involving ICE." Dkt. 29 at 1. Such a construction of Plaintiffs' request would have the virtue of clarity, notwithstanding its breadth. This approach, however, faces two problems. First, although such a modification would, in one sense, narrow the scope of Plaintiffs' request, it would, in another sense, expand the request by dropping any limitation on the subject matter of the audio and video recordings and photographs. Second, and more importantly, Plaintiffs' final proposed modification retained the vague descriptor, asking for all such records that "depict immigration enforcement or detention." *Id.* As a result, limiting the universe of records to be searched to

those "collected and maintained" in connection "with five federal lawsuits involving ICE" fails to cure the operative deficiency—a failure to "reasonably describe" the records sought with sufficient specificity to enable ICE officials to identify responsive records.

That brings the Court to the second point. Plaintiffs suggest in a footnote in their opening brief that they construe the phrase "immigration enforcement action" to include, at a minimum, "detention." Dkt. 38-1 at 2 n.1. A request for depictions of "detention" does not necessarily suffer from the same specificity concerns as a request for depictions of "immigration enforcement actions," which introduces the possibility that at least part of Plaintiffs' narrowed request survives a vagueness challenge. But this theory faces a number of insurmountable hurdles. First, and foremost, Plaintiffs never make this argument. Rather than argue that any vagueness in the phrase "any and all immigration enforcement actions" can be cured by reading the phrase to mean "detention," Plaintiffs merely equate the two concepts in the context of explaining why they have now dropped their efforts to compel ICE to respond to their separate request for photographs and recordings of "migrant children being separated from their parents . . . and subsequently held in U.S. detention facilities," Dkt. 1 at 3 (Compl. ¶ 9). *See* Dkt. 38-1 at 2 n.1. But, even had Plaintiffs argued that their request for photographs and recordings of "immigration enforcement actions" could be saved by construing the phrase to reach only "detention," their argument would still fail; clarifications of a request made for the first time at summary judgment come too late to alter the operative request before the Court. *See Freedom Watch, Inc.*, 925 F. Supp. 2d at 62.

That still leaves the question whether Plaintiffs ever attempted to clarify before summary judgment that the term "immigration enforcement action" included "detention," in which case at least part of Plaintiffs' request may not be vague. The only possible such instance that the Court

can identify came in the parties' June 5, 2020, joint status report.  There, Plaintiffs represented that "records would be within the scope of [its narrowed] request if they depict immigration enforcement or detention."  Dkt. 29 at 1.  But that status report offers no help to Plaintiffs.  At the time Plaintiffs made this representation, they had *two* requests outstanding before ICE: the first, which requested "videos, audio, and photographs . . . of any and all immigration enforcements actions" related to certain categories of individuals, and the second, which requested "videos, audio recordings, and photographs . . . of migrant children being separated from their parents or parent and subsequently held in U.S. detention facilities."  *See* Dkt. 1 at 3 (Compl. ¶ 9).  In their opening summary judgment brief, Plaintiffs dropped the second request, so that only the first request remains operative; but at the time of the parties' June 5, 2020, status report, both the first and second requests remained live, and, since only the second request referred to persons "held . . . in detention," there is no reason to believe that ICE would have understood Plaintiffs' clarification to mean that "immigration enforcement action" includes "detention."  To the contrary, the language included in the original FOIA requests and in the status report, if anything, suggested just the opposite: Plaintiffs framed their original FOIA requests to *distinguish* between depictions of "immigration enforcement actions" and depictions of "migrant children being . . . held in U.S. detention facilities," and the status report then paralleled that distinction, seeking depictions of (1) "immigration enforcement," and (2) "detention."  Dkt. 29 at 1.[5]  For these reasons, the Court concludes that Plaintiff's reference to "detention" in the June 5, 2020, status report does not rescue the vagueness of its request.

---

[5] Although Plaintiffs never developed an argument that their first request covered, at a minimum, "detentions" to which ICE could have responded, ICE did address Plaintiffs' second request in a short paragraph at the end of its opening brief.  *See* Dkt. 36 at 17.  In doing so, however, ICE appears to have focused on the language of the wrong request, quoting Plaintiffs' differently

The Court will, accordingly, grant summary judgment in Defendants' favor and will deny Plaintiffs' cross-motion for summary judgment.[6]

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion to dismiss all claims against Defendants DHS, CBP, and USCIS for lack of subject-matter jurisdiction, will **GRANT** Defendants' motion for summary judgment, Dkt. 36, and will **DENY** Plaintiffs' cross-motion for summary judgment, Dkt. 38.

**A separate order will issue.**


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  September 17, 2021

---

worded June 21, 2018, request to DHS, instead of Plaintiffs' June 19, 2018, request to ICE, *compare id.* at 17, *with* Dkt. 1 at 3 (Compl. ¶ 9); and Dkt. 1-1 at 2 (Ex. A at 2), which ICE agrees is the only request at issue, *see, e.g.*, Dkt. 36 at 12 (directing arguments to "Parts One and Two of Plaintiffs' June 19 Request").

[6] Because the Court resolves the parties' cross-motions for summary judgment on vagueness grounds, it need not reach the parties' arguments concerning the potential burden of Plaintiffs' request.